**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 20 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

PASCUAL R. RODRIGUEZ,

      Plaintiff-Appellant,

v.

IBP, INC.,

      Defendant-Appellee.

No. 96-3159
(D.C. No. 94-1168-JTM)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO**, **ANDERSON**, and **BRISCOE**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9.  Therefore, the case is ordered submitted without oral argument.

Plaintiff Pascual R. Rodriguez brought this diversity action against IBP, Inc., contending he was terminated in retaliation for seeking workers' compensation benefits.  The district court granted summary judgment in IBP's

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

favor, and Rodriguez appeals. We reverse and remand because there are disputed issues of material fact.

Rodriguez began working at IBP's Garden City, Kansas, plant in 1985, holding a number of different jobs over the years. Prior to 1992, no disciplinary actions had been taken against him, and his work was satisfactory. In April 1990, while performing his regular work operating a wizard knife to cut meat from heads, he was hit in the elbow by a bucket of meat. He reported the accident to his supervisor, and a week later he was examined by a doctor, who released him to return to work with the restriction that he should not lift more than twenty pounds with the affected arm. Rodriguez was not able to return to his regular job, and until January 1992, he was allowed to work in a variety of generally light work jobs. While during this period IBP assigned him jobs that he felt he was physically unable to do, IBP apparently reassigned him to lighter work on his request.

In January 1991, Rodriguez, through an attorney, informed IBP he was claiming entitlement to workers' compensation as a result of the April 1990 accident. In April 1991, he filed an application for hearing with the Kansas workers' compensation division. (The record does not contain further information indicating whether this hearing was held, or whether Rodriguez was successful in seeking benefits.)

On Friday, January 24, 1992, Rodriguez told the plant personnel manager, Doug Bolton, that he could not do any of the jobs assigned to him or his regular job and he asked to be placed in several lighter duty jobs. Bolton offered him jobs Bolton believed he could perform, but they were apparently not jobs Rodriguez had requested. Bolton told him that if he was unable to do these jobs, he could go home until he felt able to work, but that he would not be paid for the time at home. Additionally, Rodriguez was to call in every day before his shift began if he was not working that day. Rodriguez decided to go home because he could not do the work offered, and Bolton said, "I'll hear from you Monday." Rodriguez did not call in his absence the next day, a Saturday, but he called in that Monday and every other work day until April 7, 1992. On April 7, Rodriguez returned to work, but after working several hours at what he described as fairly heavy work, he decided he could not continue. He informed a personnel office employee, Minh Duong, that he could not work and was told he could go home without pay but was again to call in every day he did not work. IBP records indicate he failed to call in his absences on May 1 and May 4, 1992. According to Rodriguez, however, he called in both days. Combined with the prior Saturday absence, Rodriguez had three unexcused or "no-call" absences within a year, grounds for termination under IBP policy. Rodriguez' employment was terminated effective May 14, 1992.

Rodriguez brought this action contending, inter alia, that his termination violated Kansas law because IBP discharged him in retaliation for filing a workers' compensation claim. On motions for summary judgment, the district court concluded Rodriguez had not met his burden of showing a prima facie case of retaliatory discharge by clear and convincing evidence because he could not show a causal relationship between his workers' compensation claim and his discharge. Additionally, the court held because Rodriguez was unable to work at the time he was terminated, IBP was not prohibited from terminating him under Kansas law prohibiting termination of employees absent due to work-related injuries.

Rodriguez contends several genuine issues of material fact remain, precluding summary judgment. We review the district court's grant of summary judgment de novo. See Wolf v. Prudential Ins. Co., 50 F.3d 793, 796 (10th Cir. 1995). Applying the same legal standard used by the district court pursuant to Fed. R. Civ. P. 56(c), we examine the factual record and the reasonable inferences therefrom in the light most favorable to Rodriguez, the nonmovant, and determine whether any genuine issue of material fact is in dispute. Id. If there is no factual dispute, we determine whether the district court correctly applied the substantive law. Id.

Under Kansas law, the employment-at-will doctrine generally governs the employer-employee relationship; that is, absent a contract between the employer and employee covering the duration of employment, the employment is terminable at the will of either party. See Morriss v. Coleman Co., 738 P.2d 841, 847 (Kan. 1987). This means an "employer may discharge his 'at-will employee' for good cause, for no cause, or even for a wrong cause, without incurring liability to the employee for wrongful discharge." Ortega v. IBP, Inc., 874 P.2d 1188, 1191 (Kan. 1994) (quoting Morriss, 738 P.2d at 846). The only exceptions to this doctrine are based on public policy. See Dickens v. Snodgrass, Dunlap & Co., 872 P.2d 252, 262 (Kan. 1994). The exception relevant here, first announced in Murphy v. City of Topeka-Shawnee County Dep't of Labor Servs., 630 P.2d 186 (Kan. App. 1981), prohibits an employer from discharging an employee for filing a workers' compensation claim. See Ortega, 874 P.2d at 1191. This tort of retaliatory discharge has been expanded to prohibit an employer from "'discharg[ing] an employee for being absent or failing to call in an anticipated absence as the result of a work-related injury'" on the basis that it would "'allow[] an employer to indirectly fire an employee for filing a workers' compensation claim.'" Id. (quoting Coleman v. Safeway Stores, Inc., 752 P.2d 645, 652 (Kan. 1988)). See Pilcher v. Bd. of County Comm'rs, 787 P.2d 1204, 1210-11 (Kan. App. 1990).

Rodriguez contends evidence that IBP terminated him while he was absent due to a work-related injury demonstrates retaliation for his filing a workers' compensation claim sufficiently to withstand summary judgment. The parties dispute how Coleman should be applied in this case. IBP contends Coleman does not apply to this situation because Rodriguez had a medical release to return to work. It argues under Coleman, only absences caused by work-related injuries should not be counted against the employee and Rodriguez's medical release proves his injury did not cause his absence. While we agree with IBP that Coleman requires absences to be caused by a work-related injury, we do not agree that as a matter of law, a medical release proves a subsequent absence is not the result of a work-related injury. Rodriguez testified his injury caused his absences and IBP personnel admitted they knew he was absent because he claimed his work-related injury prevented him from working. Thus, there is a factual dispute regarding the cause of Rodriguez's absences that cannot be resolved on the summary judgment record before us.

IBP contends Rodriguez' violation of its neutral absenteeism policy by accumulating three unexcused absences and not his workers' compensation claim was the reason for his discharge. However, Rodriguez testified in his deposition that he called in on two of the three days in question and he did not call in the other day, a Saturday, because he left work early on Friday due to pain from his

injury and his supervisor told him to call in on the following Monday. Whether Rodriguez violated the policy is a disputed question of fact. Moreover, IBP's argument is flawed because Coleman prohibits terminating an employee for failing to call in anticipated absences due to a work-related injury because that would allow an employer to indirectly fire an employee for filing a workers' compensation claim. Coleman, 752 P.2d at 652. As in Coleman, IBP knew why Rodriguez was absent.[1] We conclude therefore that under Coleman, IBP's stated reason for discharging Rodriguez violates Kansas public policy.

IBP also contends, and the district court held, that Coleman should not apply here because the evidence did not show Rodriguez was able to return to work. Coleman does not prohibit the discharge of an employee who is unable to perform his or her work at the time of discharge, even if the inability to work was due to a work-related injury. See Rowland v. Val-Agri, Inc., 766 P.2d 819, 822 (Kan. App. 1988). An employer should not be prohibited from discharging an employee who has already been compensated for a permanently and completely

---

[1]    In Coleman, the court found the employer's failure-to-call-in argument particularly unpersuasive because a company physician had been treating the employee and providing reports to the employer. See 752 P.2d at 652. The facts here are not as compelling: Rodriguez had a medical release to return to work. But we think the critical issue is whether the employer knew the employee was absent due to a work-related injury. IBP knew Rodriguez claimed his work-related injury prevented him from doing the work IBP offered and that was why he was absent.

disabling injury.  See id. at 822.  Nevertheless, summary judgment is inappropriate because there was conflicting evidence regarding whether Rodriguez could return to work.

Somewhat ironically, IBP's position on this issue now is the opposite of its position at the time of discharge and earlier in this litigation. According to the testimony of personnel manager Bolton and IBP's responses to interrogatories, Rodriguez was capable of returning to work because he had a medical discharge, and he was not discharged for being unable to work.  See, e.g., Appellant's App. at 25-27, 109.  On the other hand, at the time of discharge Rodriguez was not working and refused to work in a position that IBP contends was within his medical restrictions.  Although Rodriguez' testimony was ambiguous as to whether he could perform his regular job at the time of termination, see id. at 80-81, he testified he could perform a number of other jobs that he contends he knew from his experience working at the plant were available but which IBP refused to assign to him, see id. at 96-99.  Drawing reasonable inferences in Rodriguez's favor, we conclude whether he was able to return to work at the time of his discharge is a disputed factual issue precluding summary judgment.

The judgment of the district court is REVERSED and this case is

REMANDED for further proceedings consistent with this opinion.


Entered for the Court

Mary Beck Briscoe
Circuit Judge